IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

| | | |
|---|---|---|
| HARSCO CORPORATION d/b/a/ | * | |
| PATENT CONSTRUCTION SYSTEMS, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| vs. | * | No. 3:04CV00389 SWW |
| | * | |
| BUILDING CONSTRUCTION | * | |
| ENTERPRISES INC., | | |
| | * | |
| Defendant. | * | |

**Memorandum Opinion and Order**

Before the Court are defendant's motion for summary judgment to which plaintiff has responded, and plaintiff's motion for summary judgment on defendant's counterclaim to which defendant has responded. For the reasons stated below, the Court finds defendant's motion for summary judgment should be denied and plaintiff's motion for summary judgment should be granted.

**Background**

This lawsuit arises out of a construction project at Arkansas State University in Jonesboro, Arkansas. Defendant Building Construction Enterprises, Inc. ("BCE") is the general contractor for the project. On or about August 16, 2002, BCE and plaintiff Harsco Corporation d/b/a/ Patent Construction Systems ("Patent") entered into a contract whereby Patent was to supply and lease various items of equipment to BCE. The main type of equipment Patent was to lease to BCE was heavy-duty shoring posts used primarily for structural support during construction. Patent delivered a load of shoring posts to the job site on or around August 30, 2002. This initial set of posts was installed on the project. Apparently, when a second shipment of shoring posts arrived on the job site

on or about October 25, 2002, BCE's representatives determined that the initial set of posts were not heavy-duty shores and did not conform to specifications.

Patent insisted that BCE pay a portion of the amount due under the lease agreement. BCE refused to pay and stated that the August shipment of non-conforming posts would cause a delay in the project and thereby subject BCE to cost overruns. The parties negotiated a compromise in February 2003. BCE agreed to pay Patent $32,704.00, an amount which covered three invoices. Patent agreed not to charge BCE rental or freight fees. BCE contends the compromise gave it the right to retain and use the shoring posts for an indefinite period of time. Patent contends the moratorium on rent was only for a few months to allow BCE to offset costs incurred when the shoring installer had to remove the existing shores and reinstall the heavy-duty posts.

In late December 2003, Patent notified BCE that it intended to bill BCE for shoring rental starting July 2003. BCE informed Patent that, pursuant to the February 2003 agreement, it did not intend to pay Patent for shoring rental. Patent filed a lawsuit in state court on October 21, 2004, alleging breach of contract and, in the alternative, fair rental value. It also sought replevin.[1] BCE filed an answer and counterclaim, and removed the action to federal court on November 16, 2004. The case is set for a jury trial the week of July 24, 2006.

## Summary Judgment

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). As a prerequisite to summary judgment, a moving party must demonstrate "an absence of

---

[1] The Court entered an Order for delivery on December 9, 2004, directing BCE to give Patent immediate possession of the specified property. *See* docket entry 4.

evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has properly supported its motion for summary judgment, the non-moving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-moving party may not rest on mere allegations or denials of his pleading but must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 587 (quoting Fed. R. Civ. P. 56(e)).

"[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.*, 49 F.3d 399, 401 (8th Cir. 1995). The inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Matsushita*, 475 U.S. at 587 (citations omitted).

**Discussion**

No formal agreement was executed between the parties. Their original agreement is evidenced by a letter from Patent to BCE dated August 16, 2002, confirming the lease terms and conditions. On the same date, BCE acknowledged its acceptance of the lease terms by issuing a purchase order to Patent. Delivery of the items listed in the purchase order is shown by Patent's invoice issued to BCE on September 1, 2002. Patent made another delivery of equipment in October 2002 and issued an invoice dated October 25, 2002. *See* Exs. to Notice of Removal, docket entry 28.

The parties subsequently negotiated and implemented a modified lease agreement in February 2003. The modified agreement is evidenced by a series of writings. The first is a letter dated November 5, 2002, from Mike Mannino, project manager for BCE, to John House, regional branch manager for Patent. The letter concerns the shipments of shoring posts.

>Last week we received a load of shoring posts from your company that appeared to be a different size than those previously delivered and installed. Project superintendent LeRoy Moats, met with a representative of Patten [sic] Construction Systems on site, and discussed the difference between the shoring posts. It was discovered at that time that the shoring posts that were originally delivered and installed are not heavy-duty shores and do not meet the structural design criteria. According to the structural engineer, the shoring posts that have been delivered do not meet the safe working loads defined on the heavy-duty shoring plans. We now must remove the existing shores and replace them with the heavy-duty shore posts. Please immediately advise us on how you intend to correct the situation.

*See* Pl's. Mot. Summ. J., Ex.2. The second is an e-mail from Mannino to House, dated February 24, 2003, which states:

>As we discussed this morning, Building Construction Enterprises agrees to issue payment to Patent Construction Systems in the amount of $32,704.00. This will cover invoices No. 503559431-001, 50359431-002 and 50359431-007. We are paying these invoices with the understanding that we will not be billed any additional rental or freight fees for the shoring that is currently on site. With this agreement, we can work with the shoring installer to cover his cost for installing and removing the original post shores that were sent and replaced, and his equipment downtime expenses. If you have any questions or understand our agreement differently, please contact me. We appreciate your efforts in working with us to settle this matter.

*Id.*, Ex. 3.

**Patent's Motion for Summary Judgment on BCE's Counterclaim**

In its counterclaim, BCE seeks damages incurred as a result of Patent delivering the wrong equipment. Patent argues it is entitled to summary judgment on the counterclaim because that claim was waived and extinguished by virtue of the modified agreement and is barred by various legal doctrines including accord and satisfaction, compromise and settlement, modification and merger, and waiver. In response, BCE says its counterclaim is based on much more than the cost items related to installation, removal, and reinstallation of the shoring posts and so its entire counterclaim should not be dismissed. *See* Def's. Br. in Supp of Ans. to Pl's. Mot. Summ. J. and Br. in Supp. of Def's. Mot. Summ. J. at 6.

In a letter dated December 31, 2003, BCE's project manager Mannino wrote Bruce Kocsis at Patent and said, in part:

> I have enclosed a copy of a letter dated November 5, 2002, as well as an e-mail correspondence sent February 24, 2003 confirming a phone conversation with Mr. John House. We made an agreement that Patent Construction Systems would not charge Building Construction Enterprises any rental or freight fees for shoring that is currently on site. This agreement was made to offset the costs we incurred from the shoring installer having to remove the incorrect shoring and reinstall the correct shoring. This did not include costs associated with lost time such as general condition costs, extended crane and equipment rental, extended supervision costs or those costs associated with potential liquidated damages. We did not pursue these additional costs based upon our agreement with your company.

*See* Def's. Br. in Supp. Resp. to Pl's. Mot. Summ. J. and Br. in Supp. of Def's. Mot. Summ. J., Ex. 3. During his deposition, Mannino testified that BCE had no intention of bringing suit against Patent for any damages that had been suffered until Patent notified BCE that it would be sending invoices for shoring rental. Mannino said: "I mean, that was part of the deal that we - - we would not ask them to pay us for any down time had they not invoiced us for shoring room." *See* Pl's. Mot. Summ. J., Ex. A at 63. The following exchange took place:

> Q: So I want to ask you a fair question . . . if Patent had never sent those invoices and filed suit, would BCE have ever brought a claim for damages as asserted in your counterclaim?
>
> A: No, because we felt like we had a deal and we were going to hold up our end of that deal.
>
> Q: And it sounds like the real point of contention, if you get down to the bottom line, is the invoicing that incurred after July of 2003?
>
> A: Mm-hmm.
>
> Q: Is that a yes?
>
> A: Yes.

> Q: And that means the real point of contention is was there any time limit on the use of the equipment without rent. That's really the main issue in this case, right?
>
> A: Yes.

*Id.*

"It is the policy of the law to encourage settlement of litigation and to uphold and enforce contracts of settlement if they are fairly arrived at and not in contravention of law or public policy." *McCoy Farms, Inc. v. J & M McKee,* 563 S.W. 2d 409, 416 (Ark. 1978). "Settlements and compromise have historically been looked upon with favor by the courts. *Brewer v. Brewer,* 390 S.W.2d 630, 631 (Ark.1965). When parties to a dispute resolve their differences through a new contract covering the same subject matter, they are bound by it, whatever may have been the original effect of the transaction. *Murphy v. Booker,* 214 S.W. 63 (Ark. 1919). A voluntary settlement of a disputed or litigated matter is conclusive, in the absence of fraud or duress. *Fitzpatrick v. Laconia Levee Dist.,* 85 S.W. 409 (Ark. 1905). Prior claims are merged into the settlement when the parties meet and agree on a compromise. *Brewer, supra.* Any existing cause of action in the same subject matter is deemed to be merged into the settlement effected between the parties. *Ragland v. Davis,* 782 S.W.2d 560 (Ark. 1990).

The Court finds that the facts are undisputed that the parties voluntarily settled any claims that could have been brought against each other at the time of their compromise. In his letter written in response to Patent's notice that it intended to bill BCE for rent from July 2003, Mannino stated: "This agreement was made to offset the costs we incurred from the shoring installer having to remove the incorrect shoring and reinstall the correct shoring. This did not include costs associated with lost time such as general condition costs, extended crane and equipment rental, extended supervision costs or

those costs associated with potential liquidated damages. We did not pursue these additional costs based upon our agreement with your company." The Court finds there is no evidence from which a reasonable jury could find that BCE did not voluntarily agree to resolve its differences with Patent through the modified agreement, thereby merging its prior claims into the settlement.

Patent also argues for summary judgment as to BCE's counterclaim on the basis of the defense of accord and satisfaction and the doctrine of waiver. "An accord and satisfaction generally involves a settlement in which one party agrees to pay and the other to receive a different consideration or a sum less than the amount to which the latter is or considers himself entitled." *Hardison v. Jackson,* 871 S.W. 2d 410, 411 (Ark. App. 1994). There must be a disputed amount and a consent to accept less than the amount in settlement of the whole before acceptance of the lesser amount can be an accord and satisfaction. *Mademoiselle Fashions, Inc. v. Buccaneer Sportswear, Inc.,* 668 S.W.2d 45 (Ark. App. 1984). "The key element of an accord and satisfaction is a meeting of the minds, or, in more modern contract terms, an objective indicator of agreement." *Fort Smith Ser. Fin. Corp. v. Parrish,* 789 S.W.2d 723, 725 (Ark.1990).

Here, the accord and satisfaction involved was the agreement between the parties that BCE would issue payment to Patent in the amount of $32,704.00 to cover three outstanding invoices and Patent would not charge BCE rental for a period of time that is now in dispute. The evidence is undisputed that this moratorium on rent was to allow BCE to offset costs incurred when the installer had to remove the existing shores and reinstall heavy-duty shores. The undisputed evidence shows that BCE agreed not to pursue costs associated with the non-conforming shoring posts in exchange for Patent not charging rent for the posts at the site.

Waiver involves the intentional surrender of a known right, and the party asserting the defense of waiver must show that the other party had full knowledge of his rights and intentionally surrendered them. *Bharodia v. Pledger,* 11 S.W.3d 540 (Ark. 2000). As noted in BCE's own correspondence, BCE had the right to bring a cause of action for damages relating to the alleged breach of the original lease agreement. Damages associated with down time and reinstallation of heavy-duty shore posts were the topics of discussion as the parties negotiated a compromise agreement. However, the facts are undisputed that BCE waived its right to bring this claim in consideration of the negotiation and implementation of the modified lease. BCE voluntarily relinquished a known right to bring a claim for damages in favor of effecting a compromise agreement. Thus, the Court finds BCE's claim is barred by the doctrine of waiver.

The Court finds Patent's motion for summary judgment on BCE's counterclaim for damages arising under the original lease should be granted as there is no genuine issue of material fact in dispute as to the parties' intention to settle those claims with the compromise agreement. It is undisputed that BCE waived its right to bring a cause of action for damages relating to the alleged breach of the original lease agreement.

**BCE's Motion for Summary Judgment**

In its motion for summary judgment, BCE claims there is no genuine issue of material fact as to the terms of the modified agreement and it is entitled to summary judgment on Patent's breach of contract claim. BCE asserts the term of the moratorium is specifically addressed in the modified agreement. Patent contends there is no reference to the term in the modified agreement, and this omission renders the agreement ambiguous and creates a fact question for the jury.

As a general rule, the meaning of an unambiguous contract presents a question of law appropriate for summary judgment, while the interpretation of an ambiguous contract presents a question of fact not appropriate for summary judgment. *McCormack v. Citibank,* 100 F.3d 532, 538 (8th Cir. 1996).

> The first rule of interpretation of a contract is to give the language employed the meaning that the parties intended, and the court must consider the sense and meanings of the words used by the parties as they are taken and understood in their plain, ordinary meaning. It is the duty of the court to construe a contract according to its unambiguous language without enlarging or extending its terms. In regard to the construction of an agreement's terms, the initial determination of the existence of an ambiguity rests with the court. When a contract is unambiguous, its construction is a question of law for the court.  A contract is unambiguous and its construction and legal effect are questions of law when its terms are not susceptible to more than one equally reasonable construction.

*Cranfill v. Union Planters Bank, N.A.,* 158 S.W.3d 703, 711 (Ark. App. 2004)(citations omitted).

"When the terms of a written contract are ambiguous and susceptible to more than one interpretation, however, extrinsic evidence is permitted to establish the intent of the parties and the meaning of the contract then becomes a question of fact.  Parol evidence to aid in the construction of an ambiguous phrase is often absolutely essential to show the real nature of the agreement." *Hackler v. Johnson,* No. CA93-928, 1994 WL 494527, at *1 (Ark. App. Aug. 31, 1994)(citations omitted).  "[T]he definition of ambiguity includes doubt caused by obscurity or indistinctness. . . ambiguity has also been defined in terms of duplicity or doubleness of meaning." *Id.* at *2.  "In the context of ambiguity appearing on the face of a written instrument, the essence of ambiguity is the condition of intellectual uncertainty created, and it matters little whether the uncertainty arises because the agreement admits of two or more meanings, because it can be understood in more than one way, or because the instrument refers to two or more things at the same time." *Id.*

BCE contends the e-mail from Mannino contains all terms and conditions of the modified agreement. Patent contends a fact question exists as to whether the modified agreement was supposed to be performed within two or three months or whether the term was indefinite as claimed by BCE. Patent also argues that because there is no actual finalized and signed modified lease agreement, a jury must decide which terms are part of the enforceable obligation.

Mannino's e-mail states no further rent will be charged but is does not state the duration of the moratorium on rent. The original lease carried a term of 84 days. *See* Ex. B, docket entry 28. Patent asserts there is nothing in Mannino's e-mail purporting to change the parties' expectation of how long the shore posts will be needed, and certainly does not estimate that BCE will need them for 20 months. Further, House testified that after he received Mannino's e-mail, he communicated with Mannino by telephone and e-mail. House testified: "[T]here was a couple of days that we kept talking back and forth and e-mailing back and forth. . . . [M]y whole reasoning behind that was, I could work with him for a couple of months, but that's all I could really do because we had over a thousand post shores out on that job." *See* Def's. Br. in Supp. Resp. Mot. Summ. J., Ex. 5 at 13. House said: "I asked him on the phone how would he be using the equipment for, and at that point, it was like he would be done in a couple of months." *Id.* at 11-12. After that, Patent would charge an additional $368.31 per day.

House testified that after he received Mannino's e-mail, he replied by stating that the agreement was acceptable "only if [Mannino] was done within the two month time frame that he said." *Id.* at 12-13.

The Court finds that the writing on which Patent's claims are based contains an ambiguity as to the duration of the moratorium on rent. There is a genuine issue of fact as to whether the parties agreed to an indefinite suspension of rental payments or a period of a couple months. Therefore, the

Court finds BCE's motion for summary judgment on Patent's breach of contract claim should be denied.

## Conclusion

IT IS THEREFORE ORDERED that plaintiff's motion for summary judgment on defendant's counterclaim [docket entry 14] is granted and defendant's motion for summary judgment on plaintiff's breach of contract claim [docket entry 19] is denied.[2]

DATED this 14th day of June 2006.

/s/Susan Webber Wright

UNITED STATES DISTRICT JUDGE

---

[2] Plaintiff's second motion for extension of time of complete discovery and extend motion deadline and defendant's motion for extension of time to file motion for summary judgment [docket entries 16 & 18] are moot.